UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KREIGHAMMER VONNJORDSSON**,          Case No. 5:11 CV 89

       Petitioner,          Judge Benita Y. Pearson

     v.          REPORT AND RECOMMENDATION

**WARDEN**,

       Respondent.          Magistrate Judge James R. Knepp, II

## INTRODUCTION

Petitioner Kreighammer Vonnjordsson, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden of the Mansfield Correctional Institution, filed a Motion to Dismiss. (Doc. 10). Petitioner then filed an Opposition. (Doc. 15). The district court has jurisdiction over the Petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated March 9, 2011). For the reasons discussed below, the undersigned recommends Respondent's Motion be granted and the Petition dismissed.

## BACKGROUND

*Factual Background*

For purposes of habeas corpus review of state court decisions, findings of facts made by a state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record. *Id.*

Petitioner has not presented clear and convincing evidence in his Petition to contravene the facts recited by the Ninth District Court of Appeals:

> [¶ 2] Shortly after 1:00 a.m. on September 11, 2007, Akron Police officers responded to 324 South Street after dispatchers received a call about a body lying in a nearby field. The officers found the body of 36-year-old Robin Wright with multiple stab wounds on her torso and extremities. The medical examiner's office later confirmed that Ms. Wright had been fatally stabbed and ruled her death a homicide. The medical examiner further concluded that, when the attacker inflicted the fatal wounds, Ms. Wright was lying on the ground in a supine position and had attempted to defend herself with her arms and legs.
>
> [¶ 3] Police found Ms. Wright's body in a field that was located near several business establishments, including a convenience store and two bars. Blood droplets found around the victim's body formed a blood trail that led police to Chuck's Steakhouse, one of the two bars located near the field. Through interviews of people who had been in the area the night before and a review of video surveillance footage taken inside and outside some of the nearby establishments, police investigators were able to identify Mr. Vonnjordsson as their suspect.
>
> [¶ 4] The investigation revealed that Mr. Vonnjordsson, who was a regular customer at Chuck's Steakhouse and nearby CW's bar, had been to both establishments the previous evening. He first came to Chuck's Steakhouse in the late afternoon and had several beers. At some point later that evening, he went to CW's, where he continued to drink beer. He left CW's after getting into an altercation with the bouncer about the price of his beer. The bouncer recalled that Mr. Vonnjordsson had become very angry and threatened to fight him and everyone in the bar. The bartender called the police, but Mr. Vonnjordsson left before the police arrived.
>
> [¶ 5] Between 8:30 and 9:00 p.m., Mr. Vonnjordsson returned to Chuck's Steakhouse accompanied by a woman who was similar in appearance to Ms. Wright. He bought two beers, and he and the woman each drank one. The bartender did not notice anything about the conversation or behavior of Mr. Vonnjordsson or the woman while they were at the bar. The two left Chuck's together after staying for about 30 minutes. Shortly afterward, the bouncer at CW's observed Mr. Vonnjordsson on the video surveillance monitor walking down South Street with a woman. Video surveillance footage of the area outside CW's also depicted the two walking in the direction of the crime scene.
>
> [¶ 6] Less than an hour after he left Chuck's Steakhouse with the woman, Mr. Vonnjordsson returned to the bar alone. The bartender observed that he immediately went to the restroom. When he came out, he asked for a towel because there were no paper towels in the restroom. After the bartender gave Mr. Vonnjordsson a towel, he

wrapped it around his hand. The bartender later discovered blood all over the restroom.

[¶ 7] The bartender further observed that Mr. Vonnjordsson was breathing heavily and was sweaty and nervous. She asked him what had happened, and he responded that "[t]he bitch tried to get smart with me." Several witnesses observed that Mr. Vonnjordsson was eager to find a ride home. He first called a former employer and asked for a ride, telling him that "[s]omething went wrong terribly" and that he needed to "get out of the neighborhood." After the former employer refused to give him a ride, Mr. Vonnjordsson was able to persuade someone at the bar to give him a ride home. While he was getting out of the car, Mr. Vonnjordsson commented to the driver about "slashing somebody up."

[¶ 8] The next day, police went to Mr. Vonnjordsson's apartment to question him and observed that he had a bad cut on his left thumb. He asked the officers, "This is about the girl on South Street, isn't it?" Mr. Vonnjordsson later admitted that he had stabbed Ms. Wright.

[¶ 9] Police were able to locate the murder weapon by reviewing surveillance footage of the field where the body was found. The video depicted someone throwing an object in a westerly direction. Officers attempted to follow the path of the object and found a folding black handle knife on the other side of a fence, approximately 95 feet from where it had been thrown. The medical examiner later determined that the blade of the knife was consistent with the wounds on the victim's body. Experts at the bureau of criminal identification and investigation confirmed that DNA of both the victim and Mr. Vonnjordsson was on the knife.

[¶ 10] Forensic evidence also connected Mr. Vonnjordsson to Ms. Wright's death through the blood droplets found around the victim's body and the blood trail leading to Chuck's Steakhouse that were all confirmed to be Mr. Vonnjordsson's blood. Tests also confirmed the presence of Ms. Wright's blood on Mr. Vonnjordsson's clothing.

*State v. Vonnjordsson*, 2009 Ohio 836, ¶¶ 2–10 (Ohio Ct. App.).

### *State Court Proceedings*

In September 2007, Petitioner was indicted by a grand jury on one count each of murder and tampering with evidence, in violation of Ohio Revised Code § 2903.02 and § 2921.12, respectively. (Doc. 10-1, at 1–2). He entered a plea of not guilty, waived his right to a jury trial, and was subsequently convicted on both counts following a bench trial in the Summit County Court of

3

Common Pleas. (Doc. 10-1, at 3–5). Petitioner was sentenced to fifteen years to life imprisonment for the murder conviction, and five years imprisonment for the tampering with evidence conviction, to run concurrently. (Doc. 10-1, at 5–6).

Petitioner timely appealed his convictions to the Ninth District Court of Appeals. (Doc. 10-1, at 7). In his appellate brief, he asserted two assignments of error:

> Assignment of Error I
> The verdict of the trial court was against the manifest weight of the evidence since the state of Ohio failed to prove each and every element of the crime of murder and tampering with evidence beyond a reasonable doubt.
>
> Assignment of Error II
> The defendant's conviction must be overturned in that his trial counsel was ineffective.

(Doc. 10-1, at 11). On February 25, 2009, the Court of Appeals issued a decision affirming Petitioner's convictions. *State v. Vonnjordsson*, 2009 Ohio 836 (Ohio Ct. App.).

On April 27, 2010, Petitioner filed an application to reopen his appeal under Ohio Appellate Rule 26(B), which allows a criminal defendant to apply to reopen an appeal based on ineffective assistance of appellate counsel. (Doc. 10-1, at 71–85). In this application, Petitioner raised six assignments of error:

> Error No. 1: The trial court prejudicially erred by allowing direct and derivative evidence to be used against the appellant at trial that was obtained in violation of his 4th, 5th, 6th, and 14th amendment rights. . . .
>
> Error No. 2: The trial court prejudicially erred by conducting a bench trial when the jury waiver was not made in open court. . . .
>
> Error No. 3: The trial court prejudicially erred when it allowed the prosecution to withhold evidence that was exculpatory in nature to the appellant. . . .
>
> Error No. 4: The trial court prejudicially erred when it allowed heresay [sic] type evidence to be used against the appellant at trial. . . .

4

> Error No. 5: The trial court prejudicially erred when it convicted the appellant of murder instead of voluntary manslaughter. . . .
>
> Error No. 6: The trial court prejudicially erred when it found the appellant guilty of tampering with evidence and imposing [sic] the maximum sentence.

(Doc. 10-1, at 73–81).

The rule requires such an application to be filed within 90 days from the journalization of the appellate judgment unless good cause for filing later is shown. Ohio App. Rule 26(B)(1). Though Petitioner filed his Rule 26(B) application more than a year after the Court of Appeals' decision he was seeking to reopen, he alleged good cause for the delay, and the Court of Appeals addressed his application on the merits. (Doc. 10-1, at 86–89). His application to reopen was denied by the court in a journal entry dated May 12, 2010. (Doc. 10-1, at 86–89). The court concluded Petitioner had "failed to demonstrate any potential merit" to his six assignments of error, and had "failed to raise a genuine issue that he was deprived of the effective assistance of counsel on appeal." (Doc. 10-1, at 89).

On June 15, 2010, Petitioner filed a motion for reconsideration of his application to reopen his appeal. (Doc. 10-1, at 90–114). By rule, applications for reconsideration must be filed no later than ten days after mailing of the order or judgment in question. Ohio App. Rule 26(A)(1)(a). The Court of Appeals, therefore, denied this motion as untimely and did not consider its merits, entering this order on June 21, 2010. (Doc. 10-1, at 115).

About three months after the denial of his application for reconsideration, Petitioner moved the Ohio Supreme Court for leave to file a delayed appeal of the denial of his Rule 26(B) application. (Doc. 10-1, at 116–121). However, under the applicable rules of procedure, a delayed appeal from a decision of a court of appeals under Ohio Appellate Rule 26(B) will not be

5

considered: "The provision for delayed appeal does not apply to appeals involving postconviction relief or appeals brought pursuant to App. R. 26(B). The Clerk shall refuse to file motions for delayed appeal involving postconviction relief or App. R. 26(B)." Ohio Supreme Court Practice Rule 2.2(A)(4)(c). Petitioner had to move for leave to file a delayed appeal because it would have been filed more than 45 days after the entry of the judgment being appealed. *See* Ohio Supreme Court Practice Rule 2.2(A)(1)(a). Accordingly, in October 2010, the Ohio Supreme Court returned Petitioner's documents to him along with a letter from the clerk's office explaining that his motion was not filed because of the aforementioned rule against delayed appeals of decisions on Rule 26(B) applications. (Doc. 10-1, at 122).

### *Federal Habeas Corpus*

Petitioner filed the instant petition on January 13, 2011. (Doc. 1). He asserts six grounds for relief:

> Ground 1: The trial court prejudicially erred by allowing direct and derivative evidence to be used against the petitioner at trial that was obtained in violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, and as such, was subject to suppression.
>
> Ground 2: The trial court prejudicially erred by conducting a bench trial when the jury waiver was not made in open court, in violation of the petitioner's Fifth, Sixth, and Fourteenth Amendment rights.
>
> Ground 3: The trial court prejudicially erred when it allowed the prosecution to withhold evidence that was exculpatory in nature to the petitioner in violation of his Fifth, Sixth, and Fourteenth Amendment rights.
>
> Ground 4: The trial court prejudicially erred when it allowed heresay [sic] evidence to be admitted and used against the petitioner at trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights.
>
> Ground 5: The trial court prejudicially erred when it convicted the petitioner of murder, with insufficient evidence to support the conviction, in violation of his Fifth, Sixth, and Fourteenth Amendment rights.

> Ground 6: In the first part of this error, the petitioner claims that the trial court prejudicially erred when it convicted him of tampering with evidence, with insufficient evidence to support the conviction, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. In the second part of this error, the petitioner claims that the trial court prejudicially erred when it imposed a sentence that is contrary to law, in violation of his Fifth, Eighth, and Fourteenth Amendment rights.

(Doc. 1-1, at 19).

### PROCEDURAL DEFAULT

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

One way procedural default occurs is when the last state court rendering a decision makes a "plain statement" basing its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 265 (1989). That is, if, due to the petitioner's failure to comply with a procedural rule, the state court declines to reach the merits of an issue, and the state procedural rule is an adequate and independent grounds for precluding relief, then the issue is procedurally defaulted unless there was actual prejudice by the alleged constitutional error and "cause" for not following the procedural rule.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). But "[t]he mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)); *see also Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (holding the last state court rendering a reasoned judgment must "clearly and expressly" state its judgment rests on a procedural bar for procedural default to apply).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138.

A procedural default will be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This is a power derived from the court's equitable discretion. *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). Despite statutory revision removing reference to an "ends of justice" inquiry by federal habeas courts, the Supreme Court has held that such an inquiry remains appropriate, but requires that a

petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 492–493 (1976)).

Here, Respondent argues that Petitioner has procedurally defaulted all six grounds. (Doc. 10, at 10–14). The six grounds for relief asserted by Petitioner are identical in substantive wording to those raised in his Rule 26(B) application. (Doc. 10-1, at 73–81).

Following *Maupin*, the Court must first assess whether a state procedural rule applied to Petitioner's circumstances, and whether he failed to comply with it. *Maupin*, 785 F.2d at 138. Neither party has disputed that Ohio Supreme Court Practice Rules 2.2(A)(4)(c) and 2.2(A)(1)(a) – which prohibit delayed appeals from denied Rule 26(B) applications and define what constitutes a delayed appeal, respectively – applied to Petitioner's situation. Furthermore, neither party disputes that Petitioner failed to follow these rules by moving to file an appeal of the denial of a Rule 26(B) application more than 45 days after said denial. The combination of Rules 2.2(A)(1)(a) and 2.2(A)(4)(c) operated to preclude the state's highest court from hearing the merits of Petitioner's claims. The state court also actually enforced these rules, refusing to file Petitioner's motion for leave and returning his papers to him while explicitly referencing Rule 2.2(A)(4)(c). (Doc. 10-1, at 122).

Next, the Court must decide whether this procedural bar is an "'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Maupin*, 785 F.2d at 138. This involves an examination of the state interests behind the procedural

9

rule in light of the federal interest in considering federal claims. *Id.* (citing *Henry v. State of Miss.*, 379 U.S. 443, 446–448 (1965)). To be adequate, a rule generally must be "firmly established and regularly followed." *Abshear v. Moore*, 354 F. App'x 964, 969 (6th Cir. 2009). But the Supreme Court recently held that even a discretionary procedural rule can be adequate and independent. *Walker v. Martin*, 131 S. Ct. 1120, 1128 (2011).

Here, just as in *Maupin*, Petitioner has not argued that the procedural rules in question are anything but "adequate and independent" state grounds. *See Maupin*, 785 F.2d at 138. Moreover, the Sixth Circuit has held very similar time limits to be "adequate and independent" state grounds. *See, e.g., Scuba v. Brigano*, 526 F.3d 479, 488 (6th Cir. 2007) (finding the time limit imposed by Ohio Appellate Rule 26(B) to be an adequate and independent state ground); *Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011) (finding procedural default after petitioner's delayed appeal was rejected under a rule granting the appellate court discretion to accept it). There is a significant state interest behind setting time limits for appeals, and the rule cited by the letter sent to Petitioner grants the Court no discretion in enforcing it. *See* Ohio Supreme Court Practice Rule 2.2(A)(4)(c). Therefore, the Court concludes the Ohio Supreme Court's refusal to hear Petitioner's appeal on the merits rested on "adequate and independent" state grounds.

Having found the first three prongs of *Maupin* to be satisfied, the Court must consider whether there was "cause" for Petitioner to not follow the Ohio Supreme Court's procedural rules, and also whether Petitioner was actually prejudiced by his alleged constitutional errors. *See Maupin*, 785 F.2d at 138 (citing *Wainright v. Sykes*, 433 U.S. 72, 87 (1977)). Such "cause and prejudice" is an exception to the rule that procedurally defaulted claims deprive a federal habeas court of jurisdiction. *Sykes*, 433 U.S. at 90–91. Under this "cause and prejudice" exception, Petitioner must

establish "a substantial reason that is external to himself and cannot be fairly attributed to him" to show cause. *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). The prejudice that must be shown needs to be a result of the alleged constitutional violation, not a result of the failure to meet state procedural guidelines. *Maupin*, 785 F.2d at 139 (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)). This burden is on Petitioner, who must show actual – not merely a possibility of – prejudice. *Id.* To properly analyze a petitioner's claims of prejudice, the court "should assume that the petitioner has stated a meritorious constitutional claim." *Id.*

Here, Petitioner makes various arguments to show "cause" for his failure to follow state procedural rules. First, Petitioner essentially argues his conditions as a pro se litigant with limited access to a prison law library and lack of legal understanding amounts to "cause".[1] While this may be an understandable reason for difficulty, the case law is abundantly clear that it is not "cause" to prevent claims from being procedurally defaulted. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir 2004).

Second, Petitioner argues his appellate counsel was ineffective. In fact, he points out that his appellate counsel "has been deemed so ineffective as to be suspended from practicing law." (Doc. 15, at 12). However, Petitioner's appellate counsel was subsequently suspended from the practice of law because of a felony grand theft conviction, completely unrelated to his work on behalf of Petitioner. *Disciplinary Counsel v. Muntean*, 127 Ohio St.3d 427, 427 (2010). This was certainly not an adjudication that Petitioner's appellate counsel was ineffective, as Petitioner's Opposition impliedly argues. But more importantly, there is no Sixth Amendment right to counsel for

---

1. At one point in his Opposition, Petitioner denies making this argument and instead labels his pro se status as "extraordinary circumstances". (Doc. 15, at 11–12). The Court liberally construes Petitioner's argument as an effort to satisfy the "cause" prong of the *Maupin* test.

discretionary appeals to the Ohio Supreme Court, so the fact Petitioner's appellate counsel did not advise him about his right to appeal to the Ohio Supreme Court is of no consequence here. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (citing *Ross v. Moffitt*, 417, U.S. 600 (1974) ("a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals"). Petitioner's appellate counsel ceased being his counsel after his direct appeal to the Court of Appeals; in no way could this establish "cause" for Petitioner's failure to follow the Ohio Supreme Court's procedural rules in pursuing subsequent appeals. Having an ineffective appellate counsel on a prior appeal is not a "substantial reason external to himself" that caused Petitioner to miss the deadline for appealing the denial of his Rule 26(B) application.

Third, with respect to the failure to take his initial two assignments of error to the Ohio Supreme Court on direct appeal, Petitioner argues he failed to do so because "those issues, as they had been argued, were intentionally forfeited." (Doc. 15, at 11). He further explained:

> Appellate counsel raised the issues on his own accord without input or approval by [P]etitioner, and failed to raise the issues that [P]etitioner had written him about (with no response). After counsel disappeared, [P]etitioner dropped the flawed arguments and sought to present his six grounds for relief up through the state appellate process[.]

(Doc. 15, at 11). The two arguments made on direct appeal were that the convictions were against the manifest weight of the evidence and Petitioner's trial counsel was ineffective. (Doc. 10-1, at 11). These issues are not presently before the Court, as they are not included in Petitioner's grounds for relief. (Doc. 1-1, at 19). Therefore, this is completely irrelevant.

Petitioner does argue that he was never mailed the denial of his motion for reconsideration, and therefore was unable to appeal it within the time limit imposed by the Ohio Supreme Court. But despite Petitioner's argument that the docket sheet reflects this, no evidence in the record supports

12

the contention that Petitioner did not receive the court's decision in a timely manner. The documents cited to by Petitioner on this point are the Court of Appeals' journal entry denying his motion for consideration and his subsequent motion to the Ohio Supreme Court. (Doc. 1-1, at 73–74). These do not show that he was never mailed a copy of the decision denying his motion for reconsideration.

The Court is satisfied Petitioner cannot show "cause" under *Sykes* and its progeny. Ultimately, though, whether Petitioner can show "cause" is moot because he cannot show actual prejudice. With respect to Petitioner's first, fourth, fifth, and sixth grounds for relief, there is still overwhelming evidence, independent of the alleged constitutional violations, sufficient to have convicted him of the crimes charged. The Court of Appeals' decision fairly summarized the mountain of evidence, including forensic evidence, against Petitioner. *State v. Vonnjordsson*, 2009 Ohio 836, ¶¶ 2–10 (Ohio Ct. App.).

Petitioner's second ground for relief appears from the record to be completely unfounded given Petitioner's waiver on the record (Doc. 10-1, at 5; Doc. 10-2, at 2–3), but even if it were not, he cannot show that actual prejudice resulted from his being tried by a judge instead of a jury. The overwhelming evidence would have allowed any reasonable finder of fact to convict him on both counts. Similarly, Petitioner cannot show actual prejudice from his third ground of relief and does not even argue that he can.

Of course, despite Petitioner's procedural default, his defaulted constitutional claims can still be reviewed by this Court if supplemented with a colorable showing of factual innocence, so as to demonstrate a fundamental miscarriage of justice. *McCleskey*, 499 U.S. at 495. However, Petitioner does not attempt to make any such showing. At most, he argues the evidence is more consistent with involuntary manslaughter than murder. (Doc. 15, at 6). But this is an argument about *legal*

13

innocence, not a showing of *factual* innocence. *See Simpson v. Sparkman*, 172 F.3d 49 (Table), at *4 (6th Cir. 1998). The Court finds no attempts to argue factual innocence, much less make a "colorable showing" thereof, in Petitioner's liberally-construed Opposition. Thus, Petitioner is not entitled to the miscarriage of justice exception. *See id.*; *see also Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) ("[W]e conclude that the 'ends of justice' require federal courts to entertain [procedurally-defaulted] petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.").

All six claims in the Petition have been procedurally defaulted. Because Petitioner fails to meet his burden of showing actual prejudice, and cannot make a colorable showing of factual innocence so as to demonstrate a fundamental miscarriage of justice, he cannot redeem this failure to have the merits of his constitutional claims adjudicated to exhaustion by the state courts. Accordingly, the Petition must be dismissed for want of jurisdiction.

The Court notes, for the sake of completeness, that the Ohio Supreme Court's rules are not Petitioner's only obstacle for purposes of federal habeas review. As Respondent correctly points out, Petitioner argued these six grounds to the state courts only in the context of an application that, by rule, must be used to argue ineffective assistance of appellate counsel. Ohio App. Rule 26(B)(1). In other words, Petitioner's Rule 26(B) application must be construed as arguing these six issues only under the theory that his appellate counsel was ineffective by not arguing them on direct appeal. In contrast, the six grounds stated in the Petition – though worded almost identically to his Rule 26(B) application grounds – are based on the merits; there is no indication Petitioner argues them here in the context of ineffective appellate counsel. (Doc. 1, at 33–34). And, alas, issues must be argued to the state courts under the same theory in which they are later presented in federal court for the

14

claims to be properly exhausted. *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). Thus, all of Petitioner's six grounds would still be procedurally defaulted even if the Ohio Supreme Court had considered his appeal on the merits.

## CONCLUSION AND RECOMMENDATION

Following review of the record, arguments presented, and applicable law, the Court is convinced all six claims made in the Petition are procedurally defaulted and no exceptions apply to allow the Court to review them on the merits. The undersigned therefore recommends Respondent's Motion be granted and the Petition dismissed.

s/James R. Knepp, II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).